**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

RYAN FINLEY and BRAD FINLEY,     )
                                         )
                Appellants,     )
                                         )
v.                                    )          Case No. 10-CV-405-GKF-FHM
                                         )
ATLAS COMPUTERS, INC., and     )
MILOS MILENKOVIC, an individual,     )
                                         )
                Appellees.     )

## OPINION AND ORDER

This matter comes before the court on the Report and Recommendation of the United States Magistrate Judge [Dkt. #18] and the Objection to the Report and Recommendation filed by Appellee Milos Milenkovic ("Milenkovic") [Dkt. #19].

This is an appeal filed by Ryan Finley and Brad Finley (the "Finleys") from a final order and judgment of the Bankruptcy Court granting Milenkovic's Motion for Summary Judgment against the Finleys. The Magistrate Judge has recommended that the Bankruptcy Court's decision be reversed. For the following reasons, the court sustains the objection, but accepts the recommended disposition on other grounds.

### Standards of Review

Pursuant to Fed.R.Civ.P. 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."

When a district court reviews a bankruptcy court decision, it applies the same standard of review that govern appellate review in other cases. *In re Hodes*, 402 F.3d 1005, 1008 (10th Cir. 2005). This court therefore reviews the bankruptcy court's legal determinations de novo and any factual findings for clear error. *Id.*

## The Undisputed Material Facts

The Finleys did not dispute the following material facts in the motion for summary judgment:

In March of 2004, the Finleys filed a lawsuit in Tulsa County District Court against Atlas Computers, Inc. and four individual defendants, including Milenkovic (the "First State Court Action"). The First State Court Action included claims entitled "Breach of Fiduciary Duty," "Tortuous [sic] Interference with Contractual Rights," "Breach of Agency," and "Wrongful Conversion." The Finleys alleged that the individual defendants purchased a majority (57%) interest in Perry Quality Services, LLC, then wrongfully "transferred assets and account receivables [sic] from Perry Quality Services, LLC to Atlas Computers, Inc," in breach of their fiduciary duty to Perry Quality Services. The Finleys alleged in their conversion claim that Atlas Computers, Inc. ("Atlas") had "intentionally and wrongfully accepted the transfer of assets from Perry Quality Services, LLC." The defendants moved to dismiss the First State Court Action because it did not comply with Oklahoma's derivative claim statutes, and the state court granted the motion.

In August, 2004, the Finleys filed a second action against the same defendants in Tulsa County District Court (the "Second State Court Action"). The Petition contained the same causes of action contained in the First State Court Action. In June of 2007, the Finleys filed an Amended Petition in which they alleged that the defendants had "methodically and swiftly misappropriated

Perry Quality Services' trade secrets and other assets for the unauthorized use and benefit of the Defendants . . ." and that Atlas was "guilty of conversion of Plaintiffs' assets."

## The Bankruptcy Court Decision

On August 28, 2007, Atlas filed a Chapter 7 Petition. Milenkovic was the sole owner of Atlas at the time of filing. On October 9, 2007, the Finleys filed a Dismissal Without Prejudice of their Second State Court Action. Two months later, the Finleys filed a proof of claim in the bankruptcy case in the amount of $1,091,787. They listed their basis for the claim as "Conversion Business." Attached to the claim was a copy of the Amended Petition filed and dismissed in state court. Milenkovic filed an objection to the claim, then filed a motion for summary judgment. In March of 2010, the Finleys filed an amended claim (the "Amended Finley Claim") in the same amount as the previous claim, but listing as its basis "Conversion Tortious Interf." The Amended Finley Claim alleged that Atlas had "defrauded the creditors and converted their assets."

The Bankruptcy Court granted Milenkovic's motion for summary judgment, observing that the legal theories underlying the Finleys' claim were that the employees and/or agents of Atlas had committed fraud against the Finleys and had caused assets in which the Finleys had an interest to be wrongfully transferred to Atlas, a legal theory commonly known as conversion. *In re Atlas Computers, Inc.*, 433 B.R. 871, 877 (Bkrtcy. N.D. Okla. 2010). The Bankruptcy Court concluded as a matter of law that any liability of Atlas under the Amended Finley Claim must arise under the doctrine of *respondeat superior* for the tortious acts of its agents or employees. *Id.* The Bankruptcy Court further concluded that the Finleys' second dismissal of their state court claims against the individual defendants operated as a release of the individual defendants as a matter of Oklahoma

law.  *Id.* at 879.  The court reasoned that, because any liability of Atlas for the tortious conduct of its agents and/or employees is vicarious liability as a matter of law, and because the agents and employees of Atlas had been released from any liability to the Finleys as a matter of law, the Finleys' release of the individual agents and employees operated as a release of Atlas under Oklahoma law.  *Id.*

### Appeal of the Bankruptcy Court's Decision to this Court and the Report and Recommendation

The Finleys appealed the Bankruptcy Court's decision.  The Court Clerk automatically referred the appeal to the United States Magistrate Judge for a report and recommendation, as is the established practice.  The Magistrate Judge recommends reversal for two reasons.  First, he states that nothing within the Statement of Undisputed Facts in the motion for summary judgment establishes that the individual defendants were employees or agents of Atlas.  Second, he concludes that the factual record was not fully developed, and it cannot be said that there is no legal basis for the assertion of a direct claim against Atlas.

Milenkovic objects to the Report and Recommendation, saying there is no issue that the individual state court defendants were agents or employees of Atlas, and that the claims asserted by the Finleys against Atlas are claims for which Atlas may only be held vicariously liable, not directly liable.

## Discussion

### A.  Is There an Issue of Fact as to Agency or Employment?

In their appeal to this court, the Finleys didn't raise an issue as to whether the individual state court defendants were agents or employees of Atlas.  In fact, the Finleys stated in their opening brief that the issue raised on appeal "is purely a question of law."  Opening Brief at 2.  Nor did they raise the issue before the  Bankruptcy Court.  And in both the First and Second State Court Actions, the Finleys alleged the following in paragraph 7 of their Verified Petitions:

> On June 27th, 2002 [the Finleys] allowed Defendant Milos Milenkovic, Neboisa Milenkovic, Verner Crisostomo and Eddie Rapson, known as the "Owasso Group," to become members in and purchase a 57% interest in Perry Quality Services, LLC.  *The "Owasso Group" are either owners and/or employees of Atlas Computers, Inc.*"

R. 29, 53 (emphasis added).  Both Verified Petitions were submitted as exhibits to the motion for summary judgment.  Further, in their Amended Petition in the Second State Court Action, the Finleys alleged "[a]n agency relationship existed between the Defendants [including Milenkovic, Crisostomo, Rabson, and Atlas] at all times material hereto."  R. 78.  The Amended Petition was also submitted as an exhibit to the motion for summary judgment.  Here, the materials placed before the Bankruptcy Court on summary judgment could not lead a rational trier of fact to conclude anything other than that the individual defendants were employees or agents of Atlas.  Consequently, there is no genuine factual issue for trial which requires denial of the motion for summary judgment.  And even if it did present a genuine factual issue, the fact that the Finleys did not raise the issue on appeal would constitute a waiver.  *Krastev v. I.N.S.*, 292 F.3d 1268, 1280 (10th Cir. 2002).

### B. Does the Factual Record Require Development
### to Determine Whether there is a Legal Basis
### for the Assertion of a Direct Claim against Atlas?

The Finleys did not argue, either in their appeal briefs or their response to the motion for summary judgment, that the factual record requires further development in order to determine whether there is a legal basis for the assertion of a direct claim against Atlas. Rather, they argue that an employer like Atlas has a nondelegable duty not to defraud persons and convert their property. This is a legal issue and does not require factual development, as the Finleys have recognized.

### C. Did the Court Err as a Matter of Law?

The Finleys argue on appeal that the Bankruptcy Court erred because their claims against Atlas do not arise under the doctrine of *respondeat superior*, but "consist of direct liability resulting from the conversion and fraud." They contend that "[t]he only important question is whether a claim is made against Atlas for wrongful conduct resulting in liability." But this argument elevates the form of pleadings above substance. A corporation may be either directly or vicariously liable to another. As the Bankruptcy Court recognized, some claims against corporations give rise to vicarous liability and rest on the doctrine of *respondeat superior*. Other claims give rise to direct liability because they arise from the corporation's nondelegable duties. For example, a claim for negligent hiring may give rise to direct liability because it arises from the corporation's nondelegable duty not to hire dangerous employees. *Magnum Foods, Inc. v. Continental Cas. Co.*, 36 F.3d 1491, 1499 (10th Cir. 1994).

The Finleys repeatedly state in their opening brief that the legal theories in their Amended Claim are conversion and fraud. See Dkt. #11 at 5 ("Appellants' claims against Atlas consist of

direct liability resulting from the conversion and fraud"); and at 7 ("the Bankruptcy Court fails to recognize that Atlas may be directly liable for its actions of conversion and fraud") ("An employer like Atlas has a nondelegable duty not to steal and defraud persons").  However, they cite no legal authority to support their contention that a corporation can be held *directly* liable for conversion or fraud.  As the Tenth Circuit stated in *Magnum Foods*,

> When a corporation itself has a duty, like the nondelegable duty not to hire or retain dangerous employees, and breaches that duty through the acts or omissions of its employees, it is held directly liable for that negligence.  In contrast, the doctrine of respondeat superior holds a corporation, as employer, liable for the torts of its employees acting in the course or scope of employment.

In the absence of any legal authority imposing a nondelegable duty giving rise to direct corporate liability for conversion or fraud, Atlas may be liable only for the conversion and/or fraud of its agents or employees acting within the scope of their agency or employment.  *In re Atlas*, 433 B.R. at 877, quoting *Magnum Foods*, 36 F.3d at 1499.   This court therefore concludes that the Bankruptcy Court did not err when it found that any liability of Atlas under the Amended Finley Claim must arise under the doctrine of *respondeat superior*.

Lastly, the Finleys argue that the Bankruptcy Court misinterpreted *Sisk v. S.B. Hunt Transport*, 81 P.3d 55 (Okla. 2003), in which the Oklahoma Supreme Court held that "a plaintiff's second dismissal of a time-barred claim against a co-defendant's servant operates, in fact and law, **to release the defendant/master** by operation of the common law rule that a servant's dismissal by the act of a plaintiff also operates to release the master's liability and to extinguish the tort claim where the claim is advanced on [the] servant's negligence alone."  *Id.* at 56 (emphasis in original). The Finleys contend the Bankruptcy Court erred because they did not release their claims against the agents and employees of Atlas by an affirmative act.  For the reasons outlined below, this court

concludes the Finleys are correct and the case must be reversed and remanded.

In *Sisk*, the Oklahoma Supreme Court explained why, in that case, the plaintiff's second dismissal operated by force of law as an effective release of the claim against the servant:

> The early common-law release concept included the notion that a "release" flows from the abandonment or extinguishment of a claim, and that following the release of one tortfeasor, there is no residual claim to be sued upon against another. . . . The legal consequence of plaintiff's second dismissal must be considered against the backdrop of the effect it has on the plaintiff's capacity to refile the claim. . . .
>
> Plaintiff's affirmative act of dismissing (for the second time) the servant from suit at once triggered the restrictive refiling opportunity afforded by the § 100 provisions. That opportunity is undeniably gone, and recommencement of this action against Courville cannot be accomplished. It is the re-commencement bar, *raised by plaintiff's own act of his second dismissal*, that, in fact and in law, extinguishes his claim against the servant. When viewed in the light of a two-prong analysis, the release rule's operation at once becomes crystal-clear. *A plaintiff's affirmative act must occur first; its required effect–one that must follow next–must be that of reprosecution's absolute bar.* To destroy a servant's liability, both elements must coincide. **Today's scenario is readily distinguishable from all those in which a plaintiff takes no affirmative step or no plaintiff's act extinguishes a servant's liability**.

*Id.* at 59-60 (emphasis in original). The procedural facts in this case differ from those in *Sisk*. The Finleys' dismissal of October 9, 2007, did not trigger the re-commencement bar and extinguish their claims against the individual defendants. That dismissal was the first dismissal of a time-barred claim, and the Finleys could have refiled their action within one year, or by October 9, 2008.[1] Milenkovic argues that when the Finleys did not refile, the individual defendants were "released as a matter of law." The problem with Milenkovic's analysis is that it ignores Justice Opala's careful

---

[1]Oklahoma's "savings statute," 12 Okla. Stat. § 100, allows an additional one year to bring a new action after an earlier suit fails otherwise than upon its merits, but affords only one refiling opportunity after the statute of limitations has run.

explanation in *Sisk* of what is required to constitute a common-law "release" that extinguishes a servant's liability. "To destroy a servant's liability, both elements [a plaintiff's affirmative act, and a reprosecution's absolute bar] must coincide." *Id.* In this case, the dismissal filed October 9, 2007, and the time bar that took effect one year later, on October 10, 2008, did not coincide. Thus, the dismissal did not operate as a common-law "release" that extinguished the claim against the individual defendants. The scenario in *Sisk* is therefore readily distinguishable from this case, where the Finleys' act of dismissal did not coincidentally extinguish the servants' liability.

The Oklahoma Court of Civil Appeals adopted the same view in a case decided shortly after *Sisk*. In *Martin v. Mid-Cal Express*, 83 P.3d 898, 901 (Okla. Civ. App. 2003)[2], the court held that, "even though the statute of limitations has run as to the servant/tortfeasor, thus rendering him immune from further suit, Plaintiff may nonetheless continue to pursue a claim against the vicariously liable master." The "release rule" pronounced in *Sisk* simply has no application where a plaintiff does not affirmatively release the servant "or no plaintiff's act extinguishes a servant's liability." *Id.* at 900. One might attempt to distinguish *Martin* on the grounds that the servant in that case was never made a party defendant, whereas the Finleys dismissed Atlas's agents and employees, and the claims later became time barred. The important similarity is that both cases present situations "where no *affirmative act* of the plaintiff bars an action against the servant." *Sisk*, 81 P.3d at 61; *Martin,* 83 P.3d at 900 (emphasis in originals). Here, as in *Martin*, no affirmative act by the plaintiff extinguished the servant's liabilty and coincided with a bar to the servant's reprosecution.

_____

[2]Pursuant to Oklahoma Supreme Court Rule 1.200 (c)(2), opinions bearing the notation "Released for publication by order of the Court of Civil Appeals" shall be considered to have persuasive effect. The *Martin* opinion bears this notation.

Insofar as there was no affirmative act by the Finleys that operated by force of law as an effective release of the Finleys' claim against Atlas' agents and employees, the running of the additional one year permitted by Oklahoma's "savings statute" did not operate as a release of the debtor, Atlas. The Bankruptcy Court therefore erred as a matter of Oklahoma law in granting Milenkovic's motion for summary judgment and disallowing the Amended Finley Claim.

## IV. CONCLUSION

For the reasons set forth above, this court sustains Appellee's objection [Dkt. # 19], but accepts the recommended disposition [Dkt. # 18] on other grounds. The Bankruptcy Court's decision is reversed, and the matter is remanded for further proceedings.

IT IS SO ORDERED this 8th day of March 2011.


Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma